FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 11, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 06-6187 |
| | (W.D. Okla.) |
| | (D.Ct. No. 06-CR-096-HE) |
| ALEXANDER CHRISTIAN MILES, | |
| Defendant - Appellant. | |

_____

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

In a one-count indictment, Alexander Christian Miles, age 44, was charged

with violating the Mann Act, 18 U.S.C. § 2423(a), by transporting a

fifteen-year-old girl into Oklahoma for sexual activity in violation of Oklahoma

law. (Case No. 05-CR-213). The indictment did not specify the Oklahoma law(s)

Miles allegedly violated.

After the jury was sworn but before any evidence was presented or

arguments made, Miles moved to dismiss the indictment for lack of specificity.

---

[*] This order and judgment is not binding precedent. 10th Cir. R. 32.1(A). Citation
to orders and judgments is not prohibited. Fed. R. App. 32.1. But it is discouraged,
except when related to law of the case, issue preclusion or claim preclusion. Any citation
to an order and judgment must be accompanied by an appropriate parenthetical notation
—(unpublished). 10th Cir. R. 32.1(A).

The district court granted the motion. Almost immediately Miles was re-indicted under the Mann Act in this case (Case No. 06-CR-96) for the same interstate transportation, but the new indictment contained a citation to the Oklahoma statutes Miles allegedly violated. Miles again moved to dismiss, this time on double jeopardy grounds. The district court denied his motion.

The Fifth Amendment of the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It prevents a person from being prosecuted for a crime of which he has once been acquitted.

> The rationale for barring a retrial after an acquittal has been explained as follows: "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety, and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*United States v. Wood*, 958 F.2d 963, 971 (10th Cir. 1992) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)). *See also Burks v. United States*, 437 U.S. 1, 11 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.").

On the other hand:

> The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final

judgment.  Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed.

*Wade v. Hunter*, 336 U.S. 684, 688-89 (1949).  In other words, the government is entitled to one fair opportunity to present its evidence and make its case for conviction.  *See Burks*, 437 U.S. at 16-17.

The jury had no opportunity to decide anything in this case—it heard neither evidence nor argument.  Nevertheless, if there was an event equivalent to an acquittal, which terminated jeopardy in the original proceeding, a second trial is barred.  The dismissal of the first indictment for failure to state an offense was not such an event.  Because the government has yet to have its one opportunity to obtain a conviction, the district court properly denied Miles' motion to dismiss.[1]

## I.  BACKGROUND

In 2001, Miles, an anesthesiology resident in New York, traveled to Cambodia, where he met a fourteen-year-old girl, S.K., to whom he proposed marriage.  The girl's family agreed to the proposal and the two were married in a traditional Cambodian wedding ceremony.  Two months later, after Miles obtained a passport for S.K., allegedly based on a misrepresentation of her age, Miles and S.K. traveled together to New York.  The two were married in a

---

[1] Our jurisdiction arises from the collateral order exception to the bar against interlocutory appeals in criminal cases.  *See Abney v. United States*, 431 U.S. 651, 659 (1977) (denial of defendant's pretrial motion to dismiss an indictment on double jeopardy grounds is appealable as a collateral order under 28 U.S.C. § 1291).

-3-

ceremony there, again allegedly based on a misrepresentation of S.K.'s age. In June 2002, Miles accepted employment as an anesthesiologist at the Jackson County Memorial Hospital in Altus, Oklahoma. Miles and S.K. traveled to Oklahoma together where they lived as husband and wife.

In an indictment filed on November 16, 2005, Miles was charged with one count of violating the Mann Act, which prohibits the knowing transportation of a minor in interstate commerce "with intent that the individual engage in . . . any sexual activity for which any person can be charged with a criminal offense under the laws of [any state] . . . ." 18 U.S.C. § 2423(a). The indictment charged:

> In or about July of 2002, in the Western District of Oklahoma and elsewhere, ALEXANDER CHRISTIAN MILES, knowingly transported a girl who had not attained the age of 18 years in interstate commerce with the intent that the girl engage in sexual activity for which the defendant could be charged with a criminal offense, in that, the defendant transported a 15-year old Cambodian girl from New York City to Altus, Oklahoma, with the intent to engage in sexual intercourse with the girl for which acts the defendant could be charged with a criminal offense under the laws of the State of Oklahoma.

(Appellant's App. at 8.) Despite its lack of specificity as to the assimilated Oklahoma statute(s) Miles neither moved to dismiss the indictment nor requested a bill of particulars during the four months the indictment was pending.[2]

---

[2] An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). As the Supreme Court has explained, an indictment must "first, contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and, second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

On April 3, 2006, one week prior to jury selection, the government filed proposed jury instructions which identified the specific Oklahoma statutes Miles allegedly violated—the statutory rape statute, Okla Stat. tit. 21, §1111(A)(1) (defining statutory rape as "an act of sexual intercourse . . . accomplished with a male or female who is not the spouse of the perpetrator . . . [w]here the victim is under sixteen (16) years of age . . ."), and the lewd acts statute, Okla. Stat. tit. 21, §1123(A)(2) (making it a crime to "knowingly and intentionally . . . [l]ook upon, touch, maul, or feel the body or private parts of any child under sixteen (16) years of age in any lewd or lascivious manner . . .").[3]

One week later, on April 10, a jury was "empaneled and admonished" and sent home with instructions to return a week later to begin the trial. No argument or evidence was presented. Before the jury returned to hear the case, Miles moved to dismiss the indictment for failure to state an offense, arguing the government could not prove he committed statutory rape or lewd molestation under Oklahoma law because marriage is a defense to both crimes.[4] In response

Miles could have moved to dismiss the indictment pursuant to Rule 12(b)(3)(B) for failure to contain the required elements or could have requested a bill of particulars pursuant to Rule 7(f). He did neither.

[3] Under Oklahoma law, lewd molestation is a lesser included offense of statutory rape. *See Dill v. Okla.*, 122 P.3d 866, 869 (Okla. Crim. App. 2005).

[4] To obtain a conviction for statutory rape or lewd molestation, the government would have to prove Miles and S.K. were not legally married. That would be the case whether marital status is considered an element of the offense or an affirmative defense. *See United States v. Scott*, 901 F.2d 871, 873 (10th Cir. 1990) (once raised by a

the government argued the marriages were a sham and their validity was an issue

for the jury. In the alternative, the government argued the indictment did not

mention the violation of any specific Oklahoma statute and, based on recently

discovered evidence, it could prove Miles forcibly raped his putative wife (an

offense for which marriage is no defense) in violation of Okla. Stat. tit. 21,

§ 1111(B) (defining rape as "an act of sexual intercourse accomplished with a

male or female *who is the spouse of the perpetrator* if force or violence is used or

threatened  . . .") (emphasis added).

The government submitted new jury instructions based on its forcible rape

theory, even though the indictment did not mention the use of force. Miles was

unaware of the government's forcible rape theory and its evidence supporting that

theory. Understandably, he complained.[5] He filed a written response to the

government's newly proposed jury instructions. It began: "The Indictment is void

on its face for failure to state a charge. By failing to specify which provision of

Oklahoma law Dr. Miles allegedly violated, the grand jury failed to charge an

offense as required by Rule 7, Fed. R. Crim. P., and the due process clause. **The**

**United States has demonstrated the flaw in the charging process by changing**

---

defendant, the government must disprove an affirmative defense beyond a reasonable
doubt).

[5] Miles does not claim discovery abuse by the government. Miles and his wife
were separated and in the process of obtaining a divorce during the first criminal
proceeding. We presume the government was also surprised by the wife's new
allegations.

-6-

**its theory of the case, from statutory rape to rape by force."** (W.D. Okla. Doc. No. 47 at 1 - Am. Resp. to Government's Supp. Br. Regarding Jury Instructions) (emphasis in original).[6] Miles argued the indictment was deficient because it failed to give fair notice of forcible rape and its lack of specificity would not enable him to assert acquittal or conviction as a double jeopardy bar to another prosecution, citing *United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir. 1991). Miles complained: "If convicted of whatever charges the Government ultimately settles on, Dr. Miles is facing a long period of incarceration . . . . The United States cannot levy such grave accusations against a defendant in terms so vague and indistinct. This error cannot be cured through a bill of particulars since a bill of particular cannot save an invalid indictment. *Russell* [*v. United States*, 369 U.S. 749, 769-70 (1962)]." (*Id*. at 3.) Miles requested a judgment of acquittal.

The trial judge expressed general concern about the sufficiency of the indictment because it failed to identify the Oklahoma statute(s) allegedly violated. But he specifically decided the government could not proceed on the forcible rape theory identified in its alternative proposed jury instructions because the indictment contained no allegation of forcible sexual intercourse. Miles was thus

---

[6] "We may take judicial notice of these documents from the public record." *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1226 n.7 (10th Cir. 2008).

deprived of proper notice of the alleged crime.[7] The judge explained: "The government's shifting theories for avoiding the impact of the marriage alleged in this case either fall short as a matter of law [the marriages were at most voidable, not void] or involve attempts to establish liability based on matters not alleged in the indictment, contrary to the Fifth and Sixth Amendments." (Appellant's App. at 15.) Accordingly he dismissed the indictment, concluding it "d[id] not state an offense and [wa]s therefore fatally defective." (*Id*.)

On April 18, 2006, while Miles was in the process of being released from jail, he was arrested under a new indictment (this case). The second indictment was the same as the first but for two changes. First, it contained an additional

---

[7] The judge said:

> In its most recent submissions to the court, the government asserts that it can prove that the defendant coerced or threatened the alleged victim in this case to engage in sexual intercourse and that this conduct constitutes a crime under Oklahoma law notwithstanding the marriage relationship. However, while such facts may be sufficient to establish a violation of Okla. Stat. tit. 21, § 1111(B), there is not the slightest hint of any such conduct alleged in the indictment. As a result, the indictment does not put the defendant on fair notice that he would have to defend against a charge of intending the forcible rape of his spouse. *See supra* n.2, citing [*United States v. Hathaway*, 318 F.3d 1001, 1009-10 (10th Cir. 2003)]. *See also United States v. Hied Van Tieu*, 279 F.3d 917, 921 (10th Cir. 2002) (constructive amendments to an indictment, prohibited by the Fifth and Sixth Amendments, occur "when the Government, through evidence presented at trial, or the district court, through instructions to the jury, broadens the basis for a defendant's conviction beyond acts charged in the indictment").

(Appellant's App. at 14 (footnote omitted) (emphasis added)).

paragraph in the "INTRODUCTION": "In New York and elsewhere, the defendant engaged in acts of sexual intercourse with the girl through use of force and threatened use of force."[8] (*Id.* at 17.) Second, it specifically referenced two particular statutes alleged to have been violated—Okla. Stat. tit. 21, §§1111(B) and 1114.[9] Marriage is not a defense to those crimes.

---

[8] The original indictment's "INTRODUCTION" provided:

> 1.   In 2001, the defendant ALEXANDER CHRISTIAN MILES, M.D. was a resident in anesthesiology in a hospital in New York City, New York. That year he traveled to Cambodia where he met a 14-year old girl and her family.
> 2.   The defendant proposed marriage to the girl's family and sent money to the girl's family. In or about October of 2001, the defendant married the 14-year old Cambodian girl in a Cambodian wedding ceremony. The defendant was 43-years old at that time.
> 3.   The defendant caused documents to be altered indicating the girl was 18-years old and obtained a Cambodian passport and visa for the girl to come to the United States.
> 4.   In or about December of 2001, the defendant transported the 14-year old girl from Cambodia to New York City where, with false documents indicating her age as 18-years old, he married her in a ceremony in New York.
> 5.   In or about June of 2002, the defendant accepted employment at the Jackson County Memorial Hospital in Altus, Oklahoma.

(Appellant's App. at 7-8.)

[9] Section 1111(B) defines rape as "an act of sexual intercourse accomplished with a male or female who is the spouse of the perpetrator if force or violence is used or threatened . . . ." Section 1114(A)(3) defines rape in the first degree to include "rape accomplished with any person by means of force, violence, or threats of force or violence

-9-

Miles moved to dismiss the second indictment and acquit "due to want of jurisdiction and double jeopardy." (*Id.* at 23.) The court denied his motion, concluding the dismissal of the first indictment was not "tantamount to an acquittal," and instead "amounted to a bare dismissal of the charge based on the inadequacy of the indictment." (*Id.* at 45-46.) Miles contends this was error.

## II. DISCUSSION

"We review de novo the district court's denial of a motion to dismiss an indictment on double jeopardy grounds." *United States v. McAleer*, 138 F.3d 852, 855 (10th Cir. 1998). The defendant has the burden of establishing double jeopardy. *United States v. Jones*, 816 F.2d 1483, 1486 (10th Cir. 1987).

The first question in a double jeopardy analysis is whether jeopardy has attached. The government concedes jeopardy attached, as the jury was empaneled and sworn before the first indictment was dismissed. *See United States v. Bizzell*, 921 F.2d 263, 266 (10th Cir. 1990).

The next, and critical, question is whether jeopardy terminated in a way that prevents re-indictment and re-prosecution. *See Illinois v. Somerville*, 410 U.S. 458, 467 (1973) ("[T]he conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.").[10]

_____

accompanied by apparent power of execution regardless of the age of the person committing the crime . . . ."

[10] In *Sanabria v. United States*, the Supreme Court summarized the "limited circumstances [when] a second trial on the same offense is constitutionally permissible"

-10-

"[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States*, 468 U.S. 317, 325 (1984). This rule has been extended to apply to the functional equivalents of acquittals. *See Smalis v. Pennsylvania*, 476 U.S. 140, 143 (1986) (concluding "a demurrer is not the functional equivalent of an acquittal" and therefore double jeopardy is no bar to an appeal); *Burks*, 437 U.S. at 16 (holding retrial barred where conviction following jury trial reversed for insufficient evidence because that is the functional equivalent of an acquittal); *United States v. Marchese*, 46 F.3d 1020, 1023 (10th Cir. 1995) (holding retrial not barred on double jeopardy grounds because the court's dismissal of the indictment "did not act as the functional equivalent of an acquittal"). Since Miles was not acquitted this case turns on

saying:
> A new trial is permitted, *e.g.*, where the defendant successfully appeals his conviction, *United States v. Ball*, 163 U.S. 662, 672, 16 S. Ct. 1192, 41 L. Ed. 300 (1896); where a mistrial is declared for a "manifest necessity," *Wade v. Hunter*, 336 U.S. 684, 69 S. Ct. 834, 93 L. Ed. 974 (1949); where the defendant requests a mistrial in the absence of prosecutorial or judicial overreaching, *United States v. Dinitz*, 424 U.S. 600, 96 S. Ct. 1075, 47 L. Ed.2d 267 (1976); or where an indictment is dismissed at the defendant's request in circumstances functionally equivalent to a mistrial, *Lee v. United States*, 432 U.S. 23, 29-30, 97 S. Ct. 2141, 53 L. Ed. 2d 80 (1977). *See also Jeffers v. United States*, 432 U.S. 137, 97 S. Ct. 2207, 53 L.Ed.2d 168 (1977).

437 U.S. 54, 63 & 63 n.15 (1978). *See also Gori v. United States*, 367 U.S. 364, 369 (1961) (concluding defendant's conviction in second trial did not violate the prohibition against double jeopardy where first trial was terminated after judge *sua sponte* declared mistrial with the interest of the defendant in mind).

-11-

whether the dismissal of the first indictment was the functional equivalent of an acquittal.

On April 11, 2006, after the jury was sworn and sent home, Miles made an oral motion to dismiss the indictment but in subsequent written materials requested a judgment of acquittal.[11]  Significantly, a judgment of acquittal was not forthcoming.[12]  Instead, being sensitive to Miles expressed Constitutional arguments about fair notice, the judge dismissed the indictment for failure to state an offense.  He later characterized the dismissal order as not "tantamount to an acquittal," but rather, "a bare dismissal of the charge."  (Appellant's App. at 46.)

"[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action."  *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977).  "Rather, [the reviewing court] must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."  *Id.*; *see, e.g.*, *United States v. Appawoo*, 553 F.2d 1242, 1246 (10th Cir. 1988) (concluding a "judgment of

---

[11]  W.D. Okla. Doc. No. 41 (Resp. to Government's 2nd Supp. Br. Regarding Jury Instructions; Doc. No. 45 (Defendant's 2nd Resp. to Government's 2nd Supp. Br. Regarding Jury Instructions; and Doc. No. 47 (Amended Response to Government's Supplemental Brief Regarding Jury Instructions).

[12] A motion for judgment of acquittal prior to the introduction of any evidence is premature.  Such a motion can only be made "[a]fter the government closes its evidence or after the close of all the evidence."  Fed. R. Crim. P. 29(a).  The sufficiency of the government's evidence is not subject to judicial scrutiny until the government has been afforded its one full opportunity to make its case for conviction.

-12-

acquittal" was in fact a dismissal because it was based on legal issues raised before trial, not on facts developed at trial).  While the form of the judge's ruling is not controlling, it does inform the debate.  *See Sanabria,* 437 U.S. at 66 ("While form is not to be exalted over substance in determining the double jeopardy consequences of a ruling terminating a prosecution, neither is it appropriate entirely to ignore the form of order entered by the trial court.") (citations omitted).  In *Sanabria* the trial court's denomination of its decision as a "judgment of acquittal" was significant.  *See id.* at 66-69.  Likewise here, the form of the dismissal order ("a bare dismissal of the charge" not "tantamount to an acquittal") as well as the judge's expressed rationale for doing so (the indictment failed to give fair warning of forcible rape) are significant.  The judge's ruling was consistent with the long-standing rule that the dismissal of a defective indictment corrects a trial error and does not bar retrial.

In *Ball v. United States*, two of three co-defendants were convicted by a jury but their convictions were reversed on a motion by the defendants due to a fatal defect in the indictment.  163 U.S. 662, 664-65 (1896).  The Supreme Court held the reversal was no bar to retrial because "it is quite clear that a defendant who procures a judgment against him upon an indictment to be set aside may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted."  *Id.* at 671.  In *Burks*, the Supreme Court explained "[t]he reversal in *Ball* was . . . based not on insufficiency of

-13-

evidence but rather on trial error, *i.e.*, failure to dismiss a faulty indictment." 437 U.S. at 14. The *Burks* Court clarified that a reversal due to insufficient evidence bars retrial but a reversal due to trial error does not. *See id.* at 15-16.

The circumstances here are admittedly different—Ball and his co-defendant were convicted, Miles was not even tried. Nevertheless, the *Burks* Court was clear in characterizing the dismissal of a faulty indictment as a trial error which presents no bar to a subsequent prosecution. *Id.* at 15; *accord Somerville*, 410 U.S. at 459.

But Miles has a different twist. He argues the dismissal of the first indictment is the functional equivalent of an acquittal because the court made a "factual resolution that the government could not prove a necessary element that an unlawful sexual act under Oklahoma law had occurred." (Appellant's Br. at 17.)

The details of Miles' argument are intricate. He first claims, because of its introductory language, the first indictment can only be read to charge rape in the second degree, which exempts a spouse from its reach. But the introductory language makes no difference. We recently explained: "An indictment need not contain introductory or prefatory matter at all . . . so if it does such matter is perforce superfluous unless expressly incorporated into one of the counts." *United States v. Redcorn*, 528 F.3d 727, 735 (10th Cir. 2008). Next he claims that in acknowledging the marriage defense the court made a factual finding—

Miles and the alleged victim were married. According to Miles, the fact of his marriage, regardless of how it came to be known by the court, is a "finding" triggering the double jeopardy bar. Specifically he argues,

> [I]n *United States v. Martin Linen*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed. 2d 642 (1977), the test is put that a defendant is acquitted when the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged . . . . Thus, applying substance over form to a district judge's judgement of acquittal, appeal is barred if the court evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction.

(Appellant's Br. at 10) (emphasis omitted). We are not persuaded.

In responding to Miles' motion to dismiss the first indictment because of the marriage defense the government presented two arguments: (1) the marriages were a sham and the validity of the New York marriage was a factual issue the jury should decide; (2) the forcible rape theory rendered the marriage issue irrelevant.

The judge rejected the government's first argument, concluding the New York marriage was voidable, not void. The fact of the marriage was never at issue—its legal significance was the tipping point. Thus, he did not consider the validity of the marriage to be a fact the jury should decide. The judge took no evidence and refused to make, or even consider making, a factual determination on the issue. But the marriage is beside the point with respect to the government's second argument.

-15-

The government argued the first indictment was worded broadly enough to encompass forcible rape and it could prove forcible rape if permitted to proceed to trial. The trial judge rejected that argument, but not because the forcible rape theory was untenable or unprovable. Instead, he agreed with Miles that the first indictment failed to state an offense, requiring Miles to go to trial on the forcible rape theory would violate his Constitutional rights, and the deficiencies in the first indictment could not be remedied by a bill of particulars.[13] *See supra* at 7.

Contrary to Miles' argument, which the dissent adopts as its central thesis, the first indictment was not dismissed based on the "fact" (stipulated or otherwise) of marriage. It was based on the failure of the indictment to provide fair warning to Miles that he must defend against forcible rape allegations. There was no adjudication of any fact going to the merits of the charge against Miles, which is an essential ingredient of a claim of double jeopardy. *See Martin Linen*, 430 U.S. at 571.

The lynchpin of Miles' argument is that the first indictment charged a violation of the Mann Act premised on, and only on, a violation of Oklahoma's statutory rape law. He had good reason to assume that was the case because of the government's posture, but that is not what the indictment charged. It did not

---

[13] Implicit in this conclusion is the conclusion that the indictment could not be amended to permit the case to go to the jury on the forcible rape charge because doing so would amount to the forbidden practice of allowing "an additional or different offense" to be charged by amendment (rather than indictment). Fed. R. Crim. P. 7(e).

specify any particular Oklahoma statute. Miles could have timely forced the government to be more precise, but he did not. Nevertheless, he was justifiably distressed with the government's eleventh hour change in tactics. And he was entitled to appropriate relief. Such relief might have included a postponement of the trial to give him an opportunity to meet the unanticipated theory and evidence. But that is not the relief he requested. The trial judge was sympathetic to his situation and, in accord with his arguments, imposed a stiff (and appropriate) sanction against the government—dismissal of the indictment. Appropriate relief did not, and does not, include immunity from trial.

This case is much like *Lee v. United States*, where the Supreme Court held a second prosecution was not barred if the first proceeding was terminated at the defendant's request after jeopardy had attached. 432 U.S. 23 (1977). Immediately prior to the attachment of jeopardy, Lee's counsel moved to dismiss the information for failure to charge knowledge or intent. *Id.* at 25. The court tentatively denied the motion due to its late timing and proceeded with a bench trial. *Id.* at 26. At the conclusion of the trial, the court had no question about the defendant's guilt, but nonetheless dismissed the information for failure to charge knowledge or intent. *Id.* In deciding whether double jeopardy barred a second prosecution, the Supreme Court explained "[t]he critical question is whether the order contemplates an end to all prosecution of the defendant for the offense charged." *Id.* at 30. The Court answered that question in the negative:

-17-

> The dismissal clearly was not predicated on any judgment that Lee could never be prosecuted for or convicted of the [crime charged]. To the contrary, the District Court stressed that the only obstacle to a conviction was the fact that the information had been drawn improperly. The error, like any prosecutorial or judicial error that necessitates a mistrial, was one that could be avoided–absent any double jeopardy bar–by beginning anew the prosecution of the defendant. And there can be little doubt that the court granted the motion to dismiss in this case in contemplation of just such a second prosecution.

*Id.* at 30-31.

Like in *Lee*, the district court here did not intend for its dismissal of the first indictment to bar re-indictment and re-prosecution of Miles. The court stated in its order of dismissal that it took "no pleasure in this disposition." (Appellant's App. at 15.) Miles "plainly deserves substantial exposure to the criminal justice system." (*Id.*) The error in the indictment—whether described as failure to state an offense or insufficient specificity—was one that could have been avoided and thus, a second prosecution is not barred. *See United States v. Bowline*, 593 F.2d 944, 949 (10th Cir. 1979) (re-indictment not barred where indictment is dismissed based on validity of charge, not merits of the case, because such dismissal "is not distinguishable from a motion for a mistrial made by the defendant").

The case of *Illinois v. Somerville,* 410 U.S. 458 (1973), is even more telling. After the jury was sworn but before evidence was presented, the prosecutor realized the indictment was fatally defective because it failed to allege

intent. *Id.* at 459. The prosecutor moved for a mistrial, which was granted over the defendant's objection. The case was retried in spite of the defendant's claim of double jeopardy and the defendant was convicted. The case arrived at the Supreme Court on federal habeas. The Court saw no double jeopardy bar to the second trial: "[T]he trial judge terminated the proceeding because a defect was found to exist in the indictment that was, as a matter of Illinois law, not curable by amendment." *Id.* at 468. Here the indictment was dismissed at Miles' urging, not over his objection.

Miles argued before the trial court that the flaws in the first indictment (failure to allege force and failure to specify the Oklahoma statute(s) allegedly violated) were of constitutional dimension and could not be cured by amendment or a bill of particulars. The dismissal of the indictment was thus akin to the mistrial declared in *Somerville*. Because it was done upon Miles' request, not over his objection, the circumstances favoring retrial are even more compelling here. The *Somerville* Court stated: "The interests of the public in seeing that a criminal prosecution proceed to verdict, either of acquittal or conviction, need not be forsaken by the formulation or application of rigid rules that necessarily preclude the vindication of that interest." *Id.* at 463. In reaching its decision the *Somerville* Court acknowledged "the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one." *Id.* at 471. Miles expressed no interest in having his fate determined by the jury first impaneled.

-19-

In *United States v. Kehoe*, the Fifth Circuit considered "whether the double jeopardy clause prohibits further prosecution of defendants who procure the mid-trial dismissal of the indictment on the ground that it fails to state an offense." 516 F.2d 78, 83 (5th Cir. 1975). The court held a second trial was not barred, focusing in particular on the fact it was the defendants who challenged the indictment, and they did so only after the jury was sworn. *Id.* at 86. Likewise here, Miles moved for dismissal of the indictment after the jury was sworn, despite the fact he had almost a week to review the government's first proposed jury instructions and make his motion before jeopardy attached. Had Miles moved to dismiss the indictment before the jury was sworn there would be little room for a double jeopardy argument.[14] And nothing changed in the intervening period. Miles allowed himself to be placed in jeopardy by not moving to dismiss the indictment prior to the attachment of jeopardy. It appears to have been a calculated strategy.

In *Wilkett v. United States*, we considered a double jeopardy question similar to the one presented here. 655 F.2d 1007 (10th Cir. 1981). There, two of

[14] If Miles was misled by the introductory materials in the first indictment or unfairly surprised by the government's new evidence and change of theory he could have moved to dismiss on April 4, 5, 6, 7, 8 or 9, before the jury was chosen. He was well aware that jury selection was scheduled for April 10 and, upon his request, rescheduled for April 11. A defendant ought not be permitted to lie behind the log hoping to exploit a problem capable of being resolved before trial. *See United States v. Spero*, 331 F.3d 57, 61-62 (2d Cir. 2003) (a motion raising a constitutional challenge to an indictment must be made prior to trial to deter gamesmanship, avoid wasting jurors' time, and avoid complex double jeopardy problems).

three defendants charged with conspiracy in the Western District of Oklahoma moved to dismiss the indictment for lack of venue at the end of the government's case. *Id.* at 1009. The court granted their motion and the defendants were then indicted in the Eastern District for substantially the same conduct. We held jeopardy had not terminated in the first proceeding in such a way as to prevent re-indictment and re-prosecution because "[t]he termination of the case was not a resolution, correct or not, of some or all of the federal elements of the offense charged." *Id.* at 1011-12 (quotations omitted). We noted the defendants "were responsible for the dismissal" and "the dismissal was not predicated upon the merits of the case, that is, the insufficiency of the evidence to convict." *Id.* at 1011. The dismissal was instead predicated on the government's failure to establish venue, which "is a question of procedure, more than anything else, and . . . does not either prove or disprove the guilt of the accused." *Id.* Like the defendants in *Wilkett*, Miles himself brought about the termination of the first proceeding on a basis other than adjudication of his guilt or innocence.

Miles calls attention to two of our cases, claiming they support his position. In both *United States v. Hunt*, 212 F.3d 539 (10th Cir. 2000), and *United States v. Fay*, 553 F.2d 1247 (10th Cir. 1977), the district judge found the evidence insufficient to sustain the charges and entered judgments of acquittal. In both cases we concluded the acquittals were not merely a matter of form, but of substance. We fail to see how either *Hunt* or *Fay* appreciably advance Miles'

argument since the judge here correctly referred to his order as a "bare dismissal," not an acquittal.

Miles also makes an "allowable unit of prosecution" argument citing *Sanabria*, 437 U.S. 54, and an argument under *Blockburger v. United States*, 284 U.S. 299 (1932). In a single count indictment Sanabria was charged with illegal gambling based upon allegations of numbers betting and horse race betting. *Sanabria*, 437 U.S. at 57. After hearing evidence the trial judge dismissed the numbers theory and later entered a judgment of acquittal as to horse betting. The question before the Supreme Court was whether Sanabria could again be tried for illegal gambling based upon his participation in numbers betting. In resolving the issue the Court looked at the allowable unit of prosecution in deciding the second trial was barred. Critical to the decision was the acquittal on the horse race betting. *Id.* at 64-65. Until there has been an acquittal (or a conviction) the allowable unit of prosecution question is not ripe. Since Miles was neither convicted nor acquitted on the original indictment the allowable unit of prosecution is not in play here. Miles is attempting to put the cart in front of the horse. His *Blockburger* argument is of similar ilk.

Under the *Blockburger* "same evidence" test, the double jeopardy bar applies where a defendant is subjected to successive prosecutions for multiple offenses "if the facts alleged in one would sustain a conviction if offered in support of the other." *United States v. Mintz*, 16 F.3d 1101, 1104 (10th Cir.

-22-

1994) (quotations omitted). This problem only presents itself where jeopardy terminated in the first prosecution in such a way as to prevent re-indictment and re-prosecution. *See Wood,* 958 F.2d at 974 ("[T]he double jeopardy test for subsequent prosecutions . . . is not applicable when the defendant has not been convicted . . . . The Supreme Court has looked to whether the subsequent prosecution was based on the same conduct of an earlier prosecution only when the earlier prosecution resulted in a conviction or acquittal."). Here, as previously discussed, it did not.

Miles cites *United States v. Genser,* 710 F.2d 1426 (10th Cir. 1983), in support of his *Blockburger* argument, but that case is inapposite because the charges in *Genser* were dismissed due to insufficiency of the evidence, the equivalent of an acquittal. *See Burks*, 437 U.S. at 16. In *Genser* we said, "In the case before us, the Government does not argue that the trial court's dismissal of the first action was on other than factual grounds." 710 F.2d at 1428. "[T]he government conceded . . . that although the case was 'dismissed,' it is clear from the record that the decision was a factual one—a recognition that the government was unable to prove that the defendant was a dispenser as defined by statute." *Id.* (quotations omitted). The only issue in *Genser* was whether "the offense charged and tried in the first prosecution is identical in law to that charged in the second." *Id. Genser* does not inform this debate—whether the dismissal here was equivalent to an acquittal.

-23-

**AFFIRMED**.

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge

No. 06-6187, *United States v. Miles*
**HOLLOWAY**, Circuit Judge, dissenting:


I


I respectfully dissent. As the majority opinion states at p. 13, we "'must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977). Here clearly the reason that the district judge dismissed the first indictment was the *fact* that the defendant and the alleged victim were married. This stipulated fact, due to operation of Oklahoma law, meant there was not a violation, as alleged, of the Mann Act. Thus a solid basis for a double jeopardy defense against prosecution under the second indictment was clear. The denial of the defendant's timely and proper motion to dismiss, invoking his double jeopardy defense, was error, and the ruling on the second indictment, with its new theory, must be reversed in this *Abney* appeal.

Here, the second indictment's shift to adopt a new theory does not free the Government from the restrictions of the Double Jeopardy Clause. The second indictment added a new paragraph. It was, nevertheless, predicated, on the same basic circumstances. The new Introduction alleged, *inter alia*, that "the defendant engaged in acts of sexual intercourse with the girl through the use of force and threatened use of force . . ." citing Oklahoma Stat. tit. 21, §§ 1111 (B) and 1114 (A) (3). Double jeopardy based on the resolution against the Government of some

or all of the factual elements of the offense as first charged bars any later prosecution under the Mann Act for the same sexual conduct "even if based on a different theory . . . ." *United States v. Hunt*, 212 F.3d 539, 547 (10th Cir 2000).

II

If the fact of the marriage of Miles and S. K. had been contested and the Government had put on evidence that the couple were not married, then a determination by the judge that the Government's evidence was insufficient on the issue would stand as a bar to further prosecution under the basic principle of double jeopardy jurisprudence. I am satisfied that it makes no difference that the insufficiency of the Government's evidence is established by a stipulated fact. In *United States v. Ogles*, 440 F.3d 1095 (9th Cir. 2006) (*en banc*), the court specifically rejected the contention that a factual determination which amounts to an acquittal must be of a *contested* fact:

> The government suggests that because Ogles did not contest his licensed status, the district court's ruling did not meet the Supreme Court's definition of acquittal – that "whatever its label, [it] actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." [*United States v. Martin Linen Supply Co.*, 430 U.S. at 571]. The Court's double jeopardy decisions do not, however, condition an acquittal under Rule 29(a) on the district court's examination of contested facts. Here, the district court determined that a factual element of the offense had not been proved by the government. What is this if not a "resolution"?

440 F.3d at 1104.

The Government here contends that the trial court's ruling was not on any

matter of evidence but only on a legal issue. In *Ogles* the Government similarly argued that the district court's judgment of acquittal of a charge of selling firearms without a license was based on a legal determination, specifically that the term "licensed dealer" in the statute was not location specific. The defendant was licensed in California but prosecuted for a sale he had made in Arizona. Thus, in one sense, the district court's judgment of acquittal was based on a legal issue, the interpretation of the statute that a license to sell is not restricted to the state of the licensee's residence. But that legal ruling was simply preliminary, the Ninth Circuit held, to the *factual* determination that the Government's evidence was insufficient for a conviction. 440 F.3d at 1103. So too, in this case, the district court's ruling dismissing the first indictment is best viewed, I conclude, as a determination that the Government would be unable to prove an essential element of the offense (that there was no marriage).

In my view, the dismissal of the first indictment was based on a finding of fact: the undisputed fact that the Defendant was married to the alleged victim. This case is unusual, in that it is true the fact-based decision of the marriage was made before any evidence had been taken. But no evidence was required to establish that critical fact: it was stipulated. The legal consequences thus are the same as if the government's evidence had been heard. The district judge's decision was a determination that the Government's evidence was insufficient to prove the charged offense. If this be so, as I am convinced is the case, then the

-3-

ruling was the equivalent of an acquittal, and the constitutional protection against double jeopardy unquestionably bars the Government's second attempt to prosecute the Defendant.[1] The Government had one full opportunity to prosecute the defendant,[2] and the Double Jeopardy Clause protected him against such further prosecution.

III

---

[1]In my view, the two indictments charge a single violation of the Mann Act, even though the kind of violation of state law, *i.e.*, the specific type of rape alleged, differed. *See Sanabria v. United States*, 437 U.S. 54, 73 (1978) (prosecution had "charged only a single gambling business" that was illegal under state law, although the state law could have been violated by either a "numbers" game or by gambling on horse racing); *United States v. Hunt*, 212 F.3d 539 (10th Cir. 2000) (acquittal of charge of theft from the mail would prohibit second prosecution for same theft on different theory).

The government here does not argue that the second indictment stated a different offense, so that prosecution under that indictment could proceed even if the dismissal of the first indictment were determined to be an acquittal, as I would hold it was. Instead, the Government argues, wrongly, that the dismissal of the first indictment was not an acquittal. (Brief of Plaintiff-Appellee at 29-34.)

[2]The majority invokes Fed. R. Crim. P. 29(a), which provides that a motion for judgment of acquittal may be made either after the prosecution has rested or at the close of all evidence, to assert that the sufficiency of the government's evidence is "not subject to judicial scrutiny" at any earlier stage. I do not, of course, contend otherwise as a matter of proper procedure. But this point provides no support whatsoever for the majority's holding because defendant's double jeopardy rights are in no way dependent upon the correctness of the district court's judgment, nor on the correctness of any rulings underlying that judgment. Instead, "[w]here a midtrial dismissal is granted on the ground, correct or not, that the defendant simply cannot be convicted of the offense charged, *[United States v.] Jenkins*[,420 U.S. 358 (1975)] establishes that further prosecution is barred by the Double Jeopardy Clause." *Lee v. United States*, 432 U.S. 23, 30 (1977). If the trial court's decision is in effect an acquittal, it would violate the Double Jeopardy clause to bring the defendant to trial again even if the acquittal had been "'based upon an egregiously erroneous foundation.'" *Sanabria v. United States,* 437 U.S. 54, 64 (1978) (quoting *Fong Foo v. United States*, 369 U.S. 141, 143 (1962)).

-4-

In the second indictment, the Government shifted gears. It had lost on its first attempt to convict the defendant due to the determination that marriage barred conviction under the Oklahoma statutory rape statute, 21 Okla. Stat.§ 1111 (A) (1), and under Oklahoma's lewd acts statute, 21 Okla. Stat. §1123. The Government cannot rely on "shift[ing] theories for avoiding the impact of the marriage", App. at 13-14, Br. of the United States 16, ¶2, as the district judge stated. I am convinced that the perception of the district judge points to the proper analysis under the Double Jeopardy Clause.

The shift to the new theory of forcible rape is barred by the analysis in *United States v. Hunt*, 212 F.3d 539 (10th Cir. 2000). There prosecution for theft from the mail was sought under 18 U.S.C. § 1708. During a bench trial the court entered judgment which stated: "I find and conclude that the defendants are not guilty under the indictment as charged." The judge concluded that the indictment alleged a theft from CTC distributor's facility. It was further concluded that CTC was not part of the mail as required for the charged offense, and the indictment failed to allege any other theft from the mail, as suggested by the Government. The defendants asserted that the Double Jeopardy Clause barred the appeal, and this court agreed.

In doing so we relied on *Sanabria v. United States*, 437 U.S. 54 (1978). There the Government charged the defendant with conducting an illegal gambling business in violation of 18 U.S. C. § 1955. The indictment had alleged two types

of illegal gambling activities: horse betting and numbers betting in violation of Massachusetts law. After trial began, the defendant moved for acquittal, arguing that there was no evidence of horse betting, a proper basis for the illegal gambling charge, it having been determined that numbers betting was not prohibited by the Massachusetts code. The Government conceded there could be no review of the district court ruling that there was insufficient evidence of the defendant's involvement with horse betting. The Government argued it was entitled to a new trial on the numbers betting charge. The Supreme Court disagreed. A judgment of acquittal which had been entered barred further prosecution on any aspect of the count and hence barred appellate review of any trial court error.

Although the Supreme Court held that the Government "could prove the offense in more than one way (by demonstrating numbers betting, horse betting or other betting), an acquittal of the offense of participation in illegal betting barred prosecution for participation in illegal gambling even if based on a different theory." 437 U.S. at 69. Thus, *Hunt* correctly followed the holding of *Sanabria.*

From precedent of the Supreme Court and our court it is clear that the shift to a new theory is impermissible as a basis for avoiding the protection of the Double Jeopardy Clause for the defendant Miles, as for the defendants in other cases.

Accordingly, I must respectfully dissent.