FILED
United States Court of Appeals
Tenth Circuit

December 9, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROBERT N. BEDFORD,

      Defendant - Appellant.

No. 10-1110
(D. Ct. Nos. 1:09-CV-02117-WDM and
1:02-CR-00541-WDM-3)
(D. Colo)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

---

Before **BRISCOE,** Chief Circuit Judge, **TACHA,** and **O'BRIEN,** Circuit Judges.

---

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Robert N. Bedford, a federal prisoner proceeding pro se, seeks a certificate of appealability ("COA") to appeal from the dismissal of his habeas petition brought pursuant to 28 U.S.C. § 2255. We take jurisdiction under 28 U.S.C. §§ 1291 and 2253(c), DENY Mr. Bedford's request for a COA, and DISMISS this appeal.

## I. BACKGROUND

Mr. Bedford was charged with a single count of conspiring to defraud or commit

an offense against the United States in violation of 18 U.S.C. § 371. The underlying objectives of the conspiracy were alleged to be (1) to defraud the United States for the purpose of impeding, impairing, obstructing and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment and collection of taxes, and (2) to commit offenses against the United States as defined by 26 U.S.C. § 7206(2) by assisting in the preparation of false tax returns. In Mr. Bedford's direct appeal, we described the tax scheme as follows:

> The genesis of this case involved a business called Tower Executive Resources that billed itself as an executive recruitment business. In fact, Tower promoted to its members the opportunity to protect assets and to enjoy tax deferral through an offshore venture. Tower marketed its asset protection services to select clients through seminars at which Defendant and others spoke.
>
> Essentially, clients learned at these seminars how to create bogus corporate entities called "international business corporations," referred to as IBC-1s and IBC-2s. IBC-1s were domestic corporations that would hire and pay IBC-2s, foreign corporations, to perform services for the IBC-1s. Those services did not actually occur.
>
> Tower clients, as owners of the IBC-2s, could then repatriate the untaxed funds the IBC-1s had paid to the IBC-2s, purportedly as business expenses. However, some Tower members repatriated the funds for personal use. Tower members also used the IBCs to engage in financial shenanigans such as bogus loans, fraudulent option agreements, and purported scholarships for their children.
>
> Defendant had a tax preparation business which prepared tax returns for some Tower clients. Defendant claims it was his understanding that Tower's system was not a tax fraud scheme, and he asserts he regularly told Tower clients they could only access the funds in their IBC-2s for regular business expenses, not personal expenses.

*United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008).

At a joint trial of Mr. Bedford and two co-defendants who were also charged with additional criminal violations, a jury found Mr. Bedford's two co-defendants guilty on several counts but could not reach a verdict as to Mr. Bedford. At a second trial of Mr. Bedford alone, the jury found him guilty. He was sentenced to 42 months' imprisonment. We affirmed his conviction and sentence on direct appeal. *Id.* at 1158.

Mr. Bedford then filed a timely § 2255 petition, alleging ineffective assistance of counsel.[1] He identifies the following five areas of ineffectiveness: (1) his attorneys at both the first and second trials failed to move for dismissal of the indictment for Speedy Trial Act violations; (2) his second attorney failed to challenge the proposed testimony of R. Jonathan Lynch, an IRS revenue agent who testified as an expert witness for the government, as improper pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); (3) his second attorney failed to object to various trial errors; (4) his second attorney failed to include issues in his Fed. R. Crim. P. 29 motion for judgment of acquittal; and (5) his second attorney failed to argue the issue of "actual innocence." The district court denied the petition and denied Mr. Bedford's application for a COA. He now seeks a COA from this court.

---

[1]Mr. Bedford had a different attorney for his first trial, his second trial, and his direct appeal. His ineffectiveness claims generally relate to his attorney at his second trial, although his Speedy Trial claim encompasses the actions of both of his trial attorneys.

## II.  DISCUSSION

A federal prisoner may not appeal from the denial of a § 2255 petition without first obtaining a COA.  28 U.S.C. § 2253(c)(1)(B).  A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  When the district court denies a prisoner's petition on the merits, a prisoner satisfies this burden by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In determining whether a petitioner has made out a claim for ineffective assistance of counsel in violation of the Sixth Amendment, we consider whether the petitioner has demonstrated that "counsel's representation 'fell below an objective standard of reasonableness,' and that there is a reasonable probability that, but for the counsel's error, 'the result of the proceeding would have been different.'"  *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)).

A.    Speedy Trial Act

When a defendant pleads not guilty, the Speedy Trial Act requires that his trial begin within seventy days of the filing and making public of the indictment or the defendant's first appearance, whichever occurs later.  18 U.S.C. § 3161(c)(1).  The sanction for violation of the Act is dismissal of the indictment.  *See id.* § 3162(a).  Certain events or delays, however, are excluded from the seventy-day time frame.  Indeed, 18

- 4 -

U.S.C. § 3161(h)(1)(D) excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." In addition, the district court can continue the case and excuse the resultant delay if the court finds that the ends of justice served by a continuance outweigh the best interest of the public and the defendant in a speedy trial. *See id.* § 3161(h)(7).

In this case, the district court correctly noted that nearly all of the delays were excludable as the result of motions to continue filed by Mr. Bedford and/or his co-defendants. *See United States v. Vogl*, 374 F.3d 976, 983 (10th Cir. 2004) (delays attributable to one defendant are applicable to all co-defendants for purposes of the Speedy Trial Act). Additionally, in response to Mr. Bedford's claim that the trial court failed to make the proper ends-of-justice findings to support the delays, the district court concluded that Mr. Bedford had not provided transcripts of the relevant hearings to support his claim and thus had failed to meet his burden to establish that his attorneys were ineffective.

In his application for a COA, Mr. Bedford has attached one transcript in which the trial court granted a motion for continuance without making an ends-of-justice finding. He does not, however, allege that he provided this or any other transcript to the district court in conjunction with his § 2255 petition. On the record before that court, then, we cannot say that reasonable jurists could debate the correctness of the district court's conclusion that Mr. Bedford failed to demonstrate any Speedy Trial Act violation which would support his claim for ineffective assistance of counsel.

B.       Testimony of Government Expert Lynch

In his § 2255 petition, Mr. Bedford takes issue with the trial testimony of R. Jonathan Lynch, an IRS revenue agent and expert witness for the government. Mr. Bedford claims that Agent Lynch's testimony was impermissible under *Daubert*. He further claims that Agent Lynch inappropriately served as a lay, an expert, and a summary witness. Mr. Bedford also contests the admissibility of the summary exhibit used by Agent Lynch, Exhibit 75.

The district court concluded that counsel for Mr. Bedford did not act unreasonably in failing to object on any of these grounds. The court stated that a *Daubert* challenge would not have been likely to succeed, given the widespread acceptance of allowing qualified revenue agents to opine about tax consequences of specific transactions. The court also stated that there is no dispute that Agent Lynch was qualified to be offered as an expert witness in his specialized area of knowledge and that there was no error in permitting him to act in different capacities as a witness. Finally, the court determined that Exhibit 75 was properly admitted.

In his application for a COA, Mr. Bedford maintains that the district court did not recognize the points he raised in his § 2255 petition, and that "[n]o one questioned Lynch's designation as an expert." Appl. for COA at 3. Mr. Bedford lists the following issues that he claims the district court "ignored" in its order denying his § 2255 petition:

> a) no relevancy test was applied b) no reliability test was applied c) no methodology was offered in the summary d) there was no distinguishing between lay, expert and summary functions which are governed by different

> rules (laws) e) there was no determination of veracity of the "facts" presented f) there were no standards of evaluating, publishing of findings nor peer review.

*Id*.

None of these points relate to the admissibility of Exhibit 75 and, as such, Mr. Bedford has failed to demonstrate that reasonable jurists could disagree with the district court's resolution of that issue and its relation to his counsel's purported ineffectiveness. To the extent these arguments implicate the trial court's failure to hold a *Daubert* hearing and to exclude Agent Lynch's testimony as a lay and/or summary witness, we note that the trial court was not obligated to act sua sponte without an objection from Mr. Bedford's counsel. To the extent these arguments implicate his trial counsel's alleged ineffectiveness in failing to object on these grounds, the district court thoroughly explained why counsel's performance did not fall below an objective standard of reasonableness, and Mr. Bedford has failed to articulate how the district court's assessment of his constitutional claim is incorrect.

C.      Failures to Object to Other Purported Errors

Mr. Bedford argues in his § 2255 petition that the trial court never ruled on his motion in limine seeking to prevent Agent Lynch's testimony. He further argues that his counsel was ineffective in failing to object to various jury instructions and to a summary exhibit offered at sentencing (Exhibit 1000). Finally, he claims that his counsel should have objected to the allegedly speculative methodology used by the district court to calculate loss for sentencing purposes. The district court rejected these claims, stating

that it, in fact, ruled on the motion in limine; that Mr. Bedford had not articulated how the jury instructions should have read, had not shown any prejudice by their alleged deficiencies, and that some of the instructions had been upheld in his direct appeal; that his objection to Exhibit 1000 was unsupported; and that the loss amount was based on a specific methodology and admissible evidence.

Mr. Bedford presses only some of these claims in his application for a COA. First, he argues that the trial court's jury instructions did not define the term "interdependence" as it relates to a conspiracy. This is incorrect as a matter of fact. The introductory jury instructions contained a proper definition. Moreover, Mr. Bedford's cursory statement that "[t]here was no evidence presented which would have met this Circuit's definition" of interdependence is conclusory and unsupported by reference to the record. His objection to the district court's instructions on the terms "aid" and "assist" similarly fail, as he has not provided definitions of these terms that he deems appropriate and has not shown how defining these terms would have affected the outcome of his trial. Likewise, Mr. Bedford's arguments regarding the district court's instructions on the elements of conspiracy are without merit because he has not explained how he was prejudiced by those instructions. Finally, Mr. Bedford contends that the district court improperly shifted the burden to him to demonstrate the admissibility of Exhibit 1000. Mr. Bedford misconstrues the district court's order. Although the government has the burden to establish the admissibility of its exhibits at trial and at sentencing, Mr. Bedford has the burden to establish his claim of ineffective assistance of counsel premised on a

failure to object in a § 2255 petition.

D.    <u>Remaining Issues</u>

The district court thoroughly reviewed Mr. Bedford's remaining claims relating to his attorney's Rule 29 motion for judgment of acquittal and his attorney's failure to argue "actual innocence."  Furthermore, the district court considered additional issues suggested by his Statement of the Case in his § 2255 petition.  Upon our own review of Mr. Bedford's petition and the district court's resolution of it, we cannot say that he has shown in his application for a COA that the district court's conclusions are incorrect or even debatable.  For each of his claims, he has failed to show that his counsel's performance was deficient, or he has failed to show how he suffered prejudice as a result of his counsel's performance.  Thus, he is not entitled to relief.

## III.  CONCLUSION

Mr. Bedford's request for a COA is DENIED and this appeal is DISMISSED.  We DENY his request to proceed in forma pauperis on appeal.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge