**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alexander Christian MILES,**
**Defendant–Appellant.**

**No. 12–6011.**

United States Court of Appeals,
Tenth Circuit.

July 9, 2012.

Randal A. Sengel, Esq., Office of the United States Attorney, Oklahoma City, OK, for Plaintiff–Appellee.

Alexander Christian Miles, Big Spring, TX, pro se.

Before HOLMES, Circuit Judge, BRORBY, Senior Circuit Judge, and EBEL, Circuit Judge.

**ORDER AND JUDGMENT***

WADE BRORBY, Senior Circuit Judge.

Defendant Alexander Christian Miles applies for a certificate of appealability

---

* After examining appellant's combined open- ing brief and application for a certificate of

(COA) to obtain review of a district court order dismissing his motion for relief under 28 U.S.C. § 2255. To obtain a COA, he must show that jurists of reason would find it at least debatable that a constitutional violation occurred and that the district court erred in its disposition of the motion. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir.2009). For reasons explained below, we deny the COA application and dismiss the appeal.

## BACKGROUND

A summary of the undisputed factual and procedural background will frame the issues under consideration. In July 2001, Mr. Miles applied for a K–1 visa to bring his fiancée from Cambodia to the U.S. for the purpose of marriage. He knowingly misrepresented her to be eighteen years of age, when in fact she was only fourteen. The visa was granted and they married in New York in December 2001. In July 2002, they moved to Oklahoma and lived as man and wife. Shortly thereafter, Mr. Miles was indicted under the Mann Act, 18 U.S.C. 2423(a), for transporting a minor across state lines with the intent to engage in sexual activity contrary to the laws of Oklahoma. Mr. Miles challenged the indictment, arguing that it did not state an offense because it failed to specify the underlying Oklahoma crime and that, if the underlying crime were statutory rape, his marriage to the victim was a complete defense negating the required predicate for the Mann Act charge. The district court dismissed the indictment without prejudice for failure to state an offense and thereby provide the defendant adequate notice of the charge he faced.

The government promptly obtained a new indictment, again charging Mr. Miles under the Mann Act but this time specifying the underlying state crime as forcible rape in violation of Okla. Stat. Ann. Tit. 22, §§ 1111B and 1114. Mr. Miles moved to dismiss on double jeopardy grounds. The district court denied the motion because its dismissal of the first indictment as defective was not the equivalent of an acquittal that would have terminated jeopardy. On interlocutory review, this court affirmed. *See United States v. Miles*, 327 Fed.Appx. 797 (10th Cir.2009).

On remand, negotiations led to a plea bargain. Mr. Miles agreed to plead guilty to a superseding information charging him with knowingly making a false and material statement about his fiancee's age on the K–1 visa application, in violation of 18 U.S.C. § 1001(a)(3), and the government agreed to dismiss the Mann Act charge. Also, as relevant here, Mr. Miles waived his right to collaterally challenge his plea or any aspect of his conviction, with a reservation regarding sentencing error.

At this point, the government made a mistake. This mistake had its roots in the fact that Mr. Miles had actually lied on two different documents submitted to the INS: he falsely stated his fiancee's age on the K–1 visa application in July 2001, and then again falsely stated her age, after she had become his wife, on an application for adjustment of status in February 2002. The superseding information conflated the two incidents, charging Mr. Miles with lying in connection with the K–1 visa application, but doing so in or about February 2002. No one noticed the error. Mr. Miles him-

appealability and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral ar-

gument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

self affirmed both the alleged date and document in his colloquy with the court establishing the factual basis for his plea at the plea hearing. He did not appeal his resultant conviction, though he did unsuccessfully challenge his sentence. *See United States v. Miles,* 411 Fed.Appx. 126 (10th Cir.2010).

### DISPOSITION OF § 2255 MOTION

Mr. Miles later brought this § 2255 proceeding, initially asserting two grounds for relief: (1) he was actually innocent of the false-statement offense due to a factual impossibility on the element of materiality; and (2) his counsel on the interlocutory double-jeopardy appeal was constitutionally ineffective, resulting in improper preservation of the Mann Act charge and thereby giving the government undue leverage to obtain a compromise plea to the false-statement offense. The parties' briefing on the actual-innocence/lack-of-materiality claim eventually highlighted the government's charging mistake, noted above, and Mr. Miles amended his pleadings to add the related claims that the superseding information failed to state an offense and lacked a factual basis.

### A. Actual–Innocence Claim and Related Objections To Indictment

Materiality is a factual element of a § 1001 offense, requiring the government to establish that the false statement at issue had "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (internal quotation marks and brackets omitted). Mr. Miles' actual-innocence claim initially arose out of his misconception that the February 2002 false statement cited in the superseding information had related to his application for adjustment of his wife's status (the document he actually submitted at that time). He contended that this false statement was inherently immaterial, since only the applicant's marriage, not her age, matters for adjustment of status, and controlling agency authority gives effect to extant marriages even if they might be voidable (e.g., on age grounds). The government responded that this argument about the immateriality of age on adjustment-of-status applications was inapposite, because Mr. Miles had pled guilty to making a false statement on a K–1 visa application. This led Mr. Miles to reply that if he was charged with making a false statement *on a K–1 visa application* in *February 2002,* his plea had no factual basis, the superseding information failed to state an offense, and he had a stronger argument on the materiality element: having already obtained a K–1 fiancée visa and married his fiancée in 2001, it would have been impossible to obtain another K–1 visa for her in February 2002, so any false statements on such an application could not possibly have influenced the foreordained denial.

The government's response to these points put the meandering dispute here onto a more straightforward path, focusing on the role of temporal allegations in charging documents. Noting that Mr. Miles was trying to exploit the incidental fact that he lied on the K–1 visa application in July 2001 rather than in February 2002 to evade criminal liability for the same false statement, the government invoked the general rule that a disparity between the alleged "on or about" date of an offense and the actual date is not fatal if the timing is not so critical to the crime or an affirmative defense (e.g., statute of limitations) as to impair substantial rights of the defendant. *See, e.g., United States v. Charley,* 189 F.3d 1251, 1272–73 (10th Cir.1999); *United States v. Nunez,* 668

F.2d 1116, 1127 (10th Cir.1981); *United States v. Allen*, 554 F.2d 398, 409 (10th Cir.1977). The district court agreed that Mr. Miles was not misled or prejudiced and should "not be allowed to capitalize on an inconsequential mistake." Dist. Ct. Order filed Dec. 22, 2011, at 6.

The district court discounted any potential statute-of-limitations concerns that the earlier date might raise, because Mr. Miles had waived limitations objections in his plea agreement. But that waiver was specifically made "with respect to Count 1 of the Information," Plea Agreement at 7, which of course specified February 2002 rather than July 2001, so it is not clear how the waiver removed limitations concerns potentially raised by a variance involving the latter (earlier) date. In addition, the district court did not address the seven-month temporal disparity here in light of our case law requiring that the date of the offense be " 'reasonably near to the specified date' alleged in the indictment.' " *Charley*, 189 F.3d at 1273 (quoting *United States v. Castillo*, 140 F.3d 874, 885 (10th Cir.1998)). In this regard, our cases have looked to see whether the defendant "committed the crime within a few weeks of—or some other interval which, under the circumstances of the case, could be considered reasonably near to" the date alleged in the charging document. *Id.* (citing *Kokotan v. United States*, 408 F.2d 1134, 1138 (10th Cir.1969)).

Such cavils need not concern us, however, because the district court ultimately rested its disposition on the collateral-review waiver included in Mr. Miles' plea agreement. *See generally United States v. Viera*, 674 F.3d 1214, 1217–19 (10th Cir.2012) (discussing enforcement of waiver of collateral review in plea agreement). To avoid the effect of his review waiver, Mr. Miles invoked the exception recognized for miscarriages of justice. *See id.* at 1217. Specifically, he argued that he was actually innocent of the charged offense and his conviction therefore constituted a miscarriage of justice. The district court concluded that the points Mr. Miles had raised did not satisfy the exacting standard for a claim of actual innocence, and we agree.[1]

"To establish actual innocence, [Mr. Miles] must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks omitted). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* "We must distinguish [legal error] simpliciter from a claim of actual innocence." *United States v. Barajas–Diaz*, 313 F.3d 1242, 1248 (10th Cir.2002); *see Prevatte v. Gunja*, 167 Fed.Appx. 39, 44 (10th Cir. 2006) ("[i]t is essential to distinguish an

---

1. The conviction of someone actually innocent of a crime has been recognized as a miscarriage of justice for purposes of excusing various procedural defaults. *See, e.g., United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir.2012) (procedural bar on collateral review due to omission of issue on direct appeal); *Lopez v. Trani*, 628 F.3d 1228, 1229–31 (10th Cir.2010) (statute of limitations on collateral review). But this court has yet to hold that an actual-innocence exception exists under the miscarriage-of-justice rubric in the context of an express waiver of review in a plea agreement. We have thus far recognized only four circumstances relieving the defendant of the consequences of such a waiver. *See Viera*, 674 F.3d at 1219. The only one that could possibly encompass an actual-innocence claim is the fourth, catch-all category permitting review "where the waiver is otherwise unlawful." *Id.* (internal quotation marks omitted). We need not definitively decide here whether a claim of actual innocence implicates the lawfulness of an express waiver of review, since we hold that no such claim has been validly advanced by Mr. Miles.

actual-innocence claim from the more common sort of legal error remedied in § 2255 proceedings"; "[t]he focus is not on the error involved but on whether . . . guilt is substantially in doubt"). Thus, we are not concerned here with legal issues (such as constructive-amendment or prejudicial-variance objections, or limitations defenses) implicated by the superseding information. *Cf. Steele v. Young*, 11 F.3d 1518, 1522 n. 8 (10th Cir.1993) (explaining that success on double jeopardy challenge to indictment would entail only legal innocence, not factual innocence). The dispositive question is solely whether Mr. Miles is factually innocent of making a false statement on the K–1 visa application he submitted for his fiancée.

This factual-innocence inquiry encompasses "all relevant evidence," *Bousley,* 523 U.S. at 623, 118 S.Ct. 1604, which includes "any admissible evidence of [defendant's] guilt even if that evidence was not presented during [his] plea colloquy," *id.* at 624, 118 S.Ct. 1604. Here, the record includes the July 2001 K–1 visa application, formally verified by Mr. Miles,[2] on which the birthdate of his fiancée is stated to be January 1, 1983, R. Vol. 1 at 119–20, falsely indicating that she was over eighteen years of age. That evidence, unopposed, is sufficient on its face to undermine a claim of factual innocence. Mr. Miles contends, however, that this false statement could not be the basis for criminal liability under § 1001(a)(3), because age was not material to the visa application, particularly as the marriage was to take place in a state, New York, where age would not have been a bar to a valid marriage. That contention is plainly belied by the operative federal and state statutes.

Under 8 U.S.C. § 1184(d)(1), a K–1 fiancee visa application will issue only if "the parties . . . are legally able . . . to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival." To obtain a marriage license in the State of New York, a minor must present documentary proof of age and written consent from her parents or guardian. N.Y. Dom. Rel. L. § 15(2). If under the age of sixteen, the minor must also secure and present the written approval of a justice of the state supreme court or a family court judge. *Id.* § 15(3). Thus, in assessing the ability of Mr. Miles and his fiancée to conclude a valid marriage within ninety days of her arrival for purposes of the K–1 visa, the true age of his fiancée, which would have triggered significant if not conclusive impediments, was plainly a material consideration.

In sum, jurists of reason would not debate the correctness of the district court's resolution of Mr. Miles' actual-innocence and related claims. His waiver of collateral review barred his legal objections relating to the indictment and his actual-innocence claim clearly failed on the merits.

### B. Ineffective Assistance of Appellate Counsel

 Mr. Miles also alleged that he received ineffective assistance of counsel on his interlocutory appeal challenging the second Mann Act indictment. The district court summarily rejected this claim on the basis that Mr. Miles was not in custody for the Mann Act charge dismissed when he pled guilty to the superseding information charging him with making the false statement on the visa application. This ruling

---

**2.** Mr. Miles at times complains that the superseding information charged him with lying *on an affidavit* in support of a K–1 visa application, when there was just an application and no separate affidavit. That is a distinction without a difference. An affidavit is simply a formally verified statement and that is what we have here.

appears to miss the thrust of Mr. Miles' claim, which is that by failing to properly argue his double-jeopardy defense to the second Mann Act indictment, counsel left him unnecessarily exposed to that serious charge, giving the government undue leverage to obtain his guilty plea to the lesser false-statement offense. Of course, whether Mr. Miles has presented a constitutional claim of any debatable merit in this regard is another question, and one we have no hesitation answering in the negative. Thus, we deny a COA on this claim as well, albeit for a different reason than that expressed by the district court. *See Davis v. Roberts,* 425 F.3d 830, 834 (10th Cir.2005) (recognizing circuit court's authority to deny a COA on basis not invoked by district court as corollary to principle of alternate-ground affirmance); *Szuchon v. Lehman,* 273 F.3d 299, 318 n. 8 (3d Cir.2001) (same).

Mr. Miles contends that his lack of success in challenging the district court's denial of his motion to dismiss the second Mann Act indictment was attributable to counsel's inadequate advocacy on his interlocutory appeal to this court. Specifically, he claims that authority from the Oklahoma Court of Criminal Appeals (OCCA), namely *State v. Brown,* 625 P.2d 1273 (Okla.Crim.App.1981), establishes that the dismissal of the first indictment should have triggered double-jeopardy protections, but his counsel failed to bring it to this court's attention. In *Brown,* the OCCA held that a rape prosecution could not be reinitiated after the grant of a demurrer based on the State's failure to present sufficient evidence that the defendant and victim were not married. *Id.* at 1274. Mr. Miles argues that had counsel relied on *Brown* in presenting his interloc-

utory appeal, we would have been compelled to rule that the dismissal of his first indictment precluded his second indictment under the Mann Act.

There are at least two patent defects in this argument. First, the prohibition on double jeopardy is a matter of federal constitutional law. While subsidiary state-law questions are properly the province of state court determination, state court rulings on double jeopardy principles—such as the attachment or termination of jeopardy—are not authoritative or binding in federal court.[3] *See Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Cordova v. Romero,* 614 F.2d 1267, 1269 (10th Cir.1980); *Dodge v. Robinson,* 625 F.3d 1014, 1019 (8th Cir. 2010); *Kennedy v. Washington,* 986 F.2d 1129, 1134 (7th Cir.1993). Second, *Brown* is not in any event inconsistent with this court's disposition of Mr. Miles' appeal. In *Brown* the OCCA merely recognized that jeopardy had attached and terminated when the trial court granted the defendant's demurrer to the State's proof at trial on the element of non-marriage. That is in keeping with black-letter double-jeopardy law, under which the dispositive inquiry for termination of jeopardy is " 'whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.' " *United States v. Farr,* 591 F.3d 1322, 1325 (10th Cir.2010) (quoting *United States v. Hunt,* 212 F.3d 539, 543 (10th Cir.2000) (further quotation omitted)). That is also precisely the inquiry driving this court's decision on Mr. Miles' interlocutory appeal; the dismissal of the indictment in his case simply was not, like the demurrer in *Brown,* premised on a resolution of the

---

**3.** Any question of "AEDPA deference" to state court decisions under 28 U.S.C. § 2254(d) is inapposite here, as this case obviously does not involve habeas corpus review of the disposition in *Brown.*

factual element of non-marriage. *See Miles,* 327 Fed.Appx. at 802–05. As the panel explained:

> Contrary to Miles' argument, ... the first indictment was not dismissed based on the "fact" (stipulated or otherwise) of marriage. It was based on the failure of the indictment to provide fair warning to Miles that he must defend against forcible rape allegations. There was no adjudication of any fact going to the merits of the charge against Miles, which is the essential ingredient of a claim of double jeopardy

*Id.* at 804–05.

Accordingly, we DENY the application for a certificate of appealability and DISMISS the appeal. Mr. Miles' motion for leave to proceed in forma pauperis on appeal is GRANTED.