**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 28, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

KEVIN THOMAS BROGAN,

       Defendant - Appellant.

No. 13-4150
(D.C. Nos. 2:12-CV-00444-TS &
2:10-CR-00284-TS-1)
(D. Utah)

**ORDER**

Before **GORSUCH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

This matter is before the court sua sponte to delete footnote one in the Order

Denying COA issued on October 17, 2014. The amended version is attached and

shall be issued nunc pro tunc to the original filing date.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

October 17, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

KEVIN THOMAS BROGAN,

      Defendant - Appellant.

No. 13-4150
(D.C. Nos. 2:12-CV-00444-TS &
2:10-CR-00284-TS-1)
(D. Utah)

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

Before **GORSUCH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

Fraud is no stranger to Kevin Thomas Brogan; this bank-fraud case marks his

third fraud conviction. He seeks leave to appeal from the denial of his 28 U.S.C.

§ 2255 motion for relief from the sentence imposed. We deny his request for a

certificate of appealability (COA) and dismiss this appeal.

### BACKGROUND

From November 2007 to April 2009, Brogan worked as a consultant for a

financial firm, providing general accounting services to one of the firm's clients.

Using information and materials obtained through his employment, Brogan

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

"falsif[ied] checks [made] payable to himself and then creat[ed] invoices and images of checks that would create the appearance that the money was paid to legitimate businesses."  Aplt. Opening Br. & Request for COA at 1-2.  Specifically,

> he would enter an invoice and then do a manual input for a check to pay for the invoice.  Brogan would then create a counterfeit check that was made payable to either Bank of America or Chase Card Services. . . . [Next], he would put the manual check and invoice back in the vendor file in case the payment was audited. . . .  [T]he Bank of America and Chase accounts belonged to him. . . .  [O]ne of the fraudulent checks he created was in his own name.

R., Vol. I at 92.

Brogan's scheme was discovered in April 2009,[1] and he was indicted on twelve charges of bank and mail fraud.  Ultimately, he pled guilty to two counts of bank fraud.

The presentence report calculated an offense level of 18 after adding 14 levels because Brogan's intended loss exceeded $400,000 but was less than $1,000,000. Given his criminal history, the resulting guidelines range was 33 to 41 months.  At the sentencing hearing, his counsel raised no objection to the calculated guidelines range.  The judge imposed a sentence in the middle of the guidelines range:  37 months.

Nearly a year after his sentencing, Brogan filed a pro se § 2255 motion in the district court, claiming he received ineffective assistance of counsel at sentencing,

---

[1]    This was not Brogan's first criminal scheme targeting an employer.  In fact, from 1996 through 1998, he defrauded two other employers.  He was convicted of bank fraud in both of those cases and sentenced to prison.

specifically "he advised his defense attorney that a fraudulent check was never generated or deposited on one of the invoices in question" and "counsel was in possession of documetation [sic] that confirmed Brogan's assertion." R., Vol. I at 24-25.

The only check found for that particular invoice was number 30878, dated December 31, 2008, and made payable to "Foreland Refining Corporation" in the amount of $24,615.84. Had check 30878 not been included in the intended loss amount, Brogan would have faced a 27-33 months guidelines range, instead of the 33-41 months range used in imposing his sentence.

After an evidentiary hearing, the judge denied § 2255 relief. Generally, he did not consider Brogan credible and went farther in concluding Brogan's counsel would have properly investigated the matter had check 30878 been brought to counsel's attention. Brogan unsuccessfully sought relief from that decision under Fed. R. Civ. P. 60(b)[2] and then appealed to this court for relief.

## DISCUSSION

### I. Standards of Review

"A federal prisoner may not appeal from the denial of a § 2255 petition without first obtaining a COA." *United States v. Bedford*, 628 F.3d 1232, 1234

---

[2] The judge construed Brogan's Rule 60(b) motion as a second or successive 2255 motion, declined to transfer it to this court, and dismissed it. That decision may have been improper, but "because the controlling constitutional claim that trial counsel was ineffective is now properly before this court," Brogan has chosen not to press the issue. Aplt. Opening Br. & Request for COA at 10 n.3.

(10th Cir. 2010).  Brogan satisfies his burden by "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  Furthermore, "[k]eeping in mind the standard of review governing a request for a [COA], . . . the district court's legal rulings on a § 2255 motion [are reviewed] de novo and its findings of fact for clear error."  *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000) (internal quotation marks omitted).

## II.  Ineffective Assistance of Counsel

To prevail on an ineffective-assistance-of-counsel claim, Brogan "must show . . . counsel's representation fell below an objective standard of reasonableness" and "prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687, 688 (1984). Our review under *Strickland*'s first prong is highly deferential, and requires counsel's performance to "have been completely unreasonable, not merely wrong."  *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (internal quotation marks omitted). If counsel was deficient in not objecting to the inclusion of check/invoice 30878, there is prejudice, "[a]s there is an increase in the actual amount of jail time that may be served using the improperly-applied guideline range."  *United States v. Horey*, 333 F.3d 1185, 1188 (10th Cir. 2003).

- 4 -

At this stage the issue presented is quite narrow.  Brogan argues evidence was available to counsel that "should have caused [him] to know . . . Check 30878 and its accompanying invoice were not part of the intended loss."  Aplt. Opening Br. & Request for COA at 14.[3]  He points out the check was voided roughly two months before the discovery of his scheme and no corresponding check made payable to him or his accounts was found.  Thus, he concludes, "the check was 'voided' in the ordinary course of business rather than 'stopped' in an effort to retract a discovered fraud."  *Id.* at 15.[4]  That's a stretch.

We start with the presumption of counsel's competence and look to the defendant to supply evidence to the contrary.  *Byrd v. Workman*, 645 F.3d 1159, 1168

---

[3]     Brogan does not challenge the district judge's decision finding him not credible and determining his counsel would have investigated the inclusion of check 30878 if the problem has been brought to counsel's attention.  Any disputes with these aspects of the judge's decision are waived.  *See United States v. Wayne*, 591 F.3d 1326, 1334 n.6 (10th Cir. 2010) (holding argument waived for failure to raise it in opening brief).  His argument here is that even without prompting counsel was ineffective in failing to object to the check being included in the intended loss computations.

[4]     Although the district judge failed to address this theory, we may do so in the first instance.  *See United States v. Alvarez*, 137 F.3d 1249, 1251 (10th Cir. 1998) ("[W]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." (internal quotation marks omitted)); *see Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005) (stating that "[n]o reason suggests itself why [the principle of affirming on any ground] should be rejected in considering an application for a COA"); *see, e.g.*, *United States v. Miles*, 546 F. App'x 730, 734-35 (10th Cir. 2012) (denying COA on a component of defendant's ineffective-assistance claim not addressed by the district court); *Szuchon v. Lehman*, 273 F.3d 299, 318 & n.8 (3d Cir. 2001) (denying COA on an access-to-competent-psychiatrist claim on a ground not addressed by the district court).

(10th Cir. 2011).  The evidence available to Brogan's counsel suggests check/invoice 30878 was actually part of Brogan's scheme.  In particular, Dalbo—the victim of Brogan's scheme—listed check 30878 in a table with four other checks as, "*Fraudulent Checks* That Didn't Clear The Banks."  R., Vol. I at 241 (emphasis added).  Although the payee is listed as "???," another check in that category, uncontested by Brogan, likewise designates no payee.  *Id.*  Moreover, a report prepared by Dalbo's investigators recounted a May 2009 meeting with Brogan, and stated the parties "generally agree[d]" on the fraudulent checks, with the exception of two checks, neither of which was number 30878.  *Id.* at 99.  Additionally, a report from the Postal Inspection Service indicated the actual and intended losses from Brogan's scheme were $404,388, which included the $24,615.84 from check 30878.

Counsel is expected to test problematic aspects of the government's case, but cannot be expected to run to ground every factual anomaly, particularly one retrieved, post hoc, from the bowels of the record.  By no means do we suggest that counsel need not consider, discuss, and possibly investigate matters of concern to a client.  But that is a different case.  After an evidentiary hearing the district judge concluded:  1) Brogan did not call the anomaly now relied upon to the attention of counsel; and 2) had he done so counsel would have investigated.  That conclusion is not contested.  We are then left only with the argument that counsel should have somehow divined a problem not reasonably suggested by the record.  We cannot say

counsel acted unreasonably in not contesting check 30878's inclusion as an intended loss. The propriety of the decision denying § 2255 relief is not reasonably debatable.

## CONCLUSION

We deny a COA and dismiss this appeal.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk