FILED
United States Court of Appeals
Tenth Circuit

May 3, 2019

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ALEXANDER CHRISTIAN MILES,

     Defendant - Appellant.

No. 18-6119

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:06-CR-00096-HE-1)**
_____

Don P. Chairez, Law Offices of Don Chairez, Las Vegas, Nevada, for Defendant-Appellant.

Steven W. Creager, Assistant United States Attorney (Robert J. Troester, First Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.
_____

Before **HARTZ**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Defendant Alexander Christian Miles appeals the denial of his second petition for a writ of coram nobis. He pleaded guilty in 2009 to submitting a false affidavit in connection with an application for a visa for a 14-year-old girl from Cambodia to whom

he was engaged. He has already unsuccessfully challenged that judgment in a direct appeal, a motion for relief under 28 U.S.C. § 2255, and a previous petition for a writ of coram nobis. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's denial of his second petition because each of its claims for relief either had been raised by Defendant in earlier proceedings and rejected by this court, or could have been raised in those proceedings and was inexcusably neglected.

## I.  BACKGROUND

Defendant, age 43 at the time, married a 14-year-old Cambodian girl, S.K., in a Cambodian wedding ceremony in October 2001. The previous July he had applied to the Immigration and Naturalization Service (INS) for a K-1 visa on S.K.'s behalf, and represented in his affidavit in support of the application that she was 18 years old. The visa was granted and he and S.K. moved to New York, where they were married in December 2001. In February 2002, S.K. applied to the INS for adjustment of status, and Defendant again lied about her age on his affidavit in support of that application.

In July 2002, Defendant and S.K. moved to Oklahoma. Shortly thereafter, federal prosecutors charged him with violating the Mann Act, 18 U.S.C. § 2423(a), which prohibits transporting a minor across state lines with intent to engage in sexual activity contrary to state law. After a jury was empaneled and sworn, but before any evidence or argument had been presented to it, the district court granted Defendant's motion to dismiss the indictment because it did not specify the underlying Oklahoma offense— leaving open the possibility that it was statutory rape, an offense to which Defendant's marriage to S.K. would have provided a complete defense.

The government re-indicted Defendant under the Mann Act, this time specifying that the underlying Oklahoma offense was forcible rape. He moved to dismiss that indictment on double-jeopardy grounds, but the district court denied the motion and we affirmed after an interlocutory appeal. *See United States v. Miles (Miles I)*, 327 F. App'x 797, 798 (10th Cir. 2009). He then entered into a plea agreement with the government under which the indictment was to be dismissed, and he pleaded guilty to an information charging him with violating 18 U.S.C. § 1001(a)(3) by falsely stating S.K.'s age in the K-1 visa application. Unnoticed by the court or the parties, however, the information stated that the K-1 application had been filed in February 2002 (the date of the application for adjustment of S.K.'s status) rather than the true date of July 2001. Nonetheless, Defendant "himself affirmed both the alleged date and document in his colloquy with the court establishing the factual basis for his plea at the plea hearing." *United States v. Miles* (*Miles III*), 546 F. App'x 730, 731–32 (10th Cir. 2012).

The plea agreement contained a clause waiving Defendant's right to "[a]ppeal or collaterally challenge his guilty plea," and his right to "[a]ppeal, collaterally challenge, or move to modify . . . his sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the advisory guideline range determined by the Court to apply to this case." Aplt. App. at 42. The court imposed a five-year sentence and sex-offender conditions, Defendant appealed the imposition of the sex-offender conditions, and we affirmed the sentence. *See United States v. Miles* (*Miles II*), 411 F. App'x 126, 127–28 (10th Cir. 2010).

In 2011, Defendant filed a pro se § 2255 motion claiming (1) that he was actually innocent of making a material false statement to the INS in February 2002, because his wife's age was not material to the application for adjustment of status, (2) that his attorney in the double-jeopardy appeal had been ineffective, and (3) that if the charge to which he pleaded had actually been making a false statement on a K-1 visa application for S.K. in February 2002, his plea had no factual basis and any false statement was immaterial because he had already obtained a K-1 fiancée visa by that time. The district court denied the motion, and we declined to issue a certificate of appealability. *See Miles III*, 546 F. App'x at 736. We held that the collateral-review waiver in Defendant's plea agreement barred any legal challenge to his guilty plea and, relevant to this appeal, that he was not "factually innocent of making a false statement on the K–1 visa application he submitted for his fiancée." *Id*. at 734.

In 2013, after he had served his sentence, Defendant filed a pro se petition for a writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651(a). *See United States v. Denedo*, 556 U.S. 904, 911 (2009) ("In federal courts the authority to grant a writ of coram nobis is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'"). "A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241." *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013). But a remedy is rarely available. Federal courts are only permitted "to entertain coram nobis applications in extraordinary cases presenting

4

circumstances compelling its use to achieve justice." *Rawlins v. Kansas*, 714 F.3d 1189, 1196 (10th Cir. 2013) (internal quotation marks omitted).

Defendant's petition asserted that he had thought his guilty plea was based on making a false statement on the 2002 adjustment-of-status form rather than the 2001 visa application, that his trial counsel had told him that was the case, and that he discovered that he had pleaded guilty to lying on the visa application only upon reading this court's decision on his § 2255 motion. The district court denied the petition, and we affirmed. *See United States v. Miles (Miles IV)*, 553 F. App'x 846, 849 (10th Cir. 2014). We held that the petition was procedurally barred because Defendant had previously "had an adequate remedy under § 2255" for the claim he was asserting, and that he was not entitled to the miscarriage-of-justice exception to the bar because he had not shown his factual innocence. *Id.* at 848–49.

Finally, Defendant filed a second petition for a writ of coram nobis, the one at issue in this appeal. He claims that he is actually innocent of the false-statement offense to which he pleaded guilty because his false statement of S.K.'s age was not material to either the visa application or the application for adjustment of status. And he claims that his trial counsel was ineffective in two respects: (1) for not fulfilling his duty under *Padilla v. Kentucky*, 559 U.S. 356 (2010), to adequately inform Defendant of the immigration consequences of his plea, and (2) for failing to investigate the facts and law on the materiality of Defendant's false statement. The district court initially treated the petition as a successive § 2255 motion and dismissed it on that ground, but we reversed that dismissal in *United States v. Miles (Miles V)*, 697 F. App'x 601, 602 (10th Cir.

5

2017), on the ground that it is improper to recharacterize a petition by a person no longer in custody as a § 2255 motion. On remand the district court once again dismissed the petition, this time on the grounds that it was barred as an abuse of the writ, was barred by Defendant's collateral-review waiver, and in any event did not satisfy the requirements for a writ to issue. Agreeing in essence with the first ground, we need not address the others.

## II. DISCUSSION

### A. General Principles Governing Collateral Attacks on Convictions

Before filing the coram nobis petition at issue here, Defendant had appealed his sentence, pursued relief under § 2255, and sought relief under a prior coram nobis petition. The question naturally arises whether there is any limit to how many postconviction petitions he can file. Are there procedural barriers to such petitions, or must we always address each issue he raises?

There is a body of law limiting second or successive habeas corpus petitions (including applications under 28 U.S.C. §§ 2241 and 2254 and motions under § 2255), which are by far the most common avenues for challenges to convictions after direct appeals have been exhausted or not pursued. Although the Supreme Court has consistently "rejected res judicata in a strict sense as a basis for dismissing a later habeas action," it has "made clear that the prior adjudication [bears] vital relevance to the exercise of the court's discretion in determining whether to consider the petition." *McCleskey v. Zant*, 499 U.S. 467, 482 (1991). Some of this law derives from statutory provisions, particularly the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), but several principles were developed through judicial decisions predating AEDPA. *See id.* at 489 ("[T]he doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions."); *Stanko v. Davis*, 617 F.3d 1262, 1269 (10th Cir. 2010) ("Long before AEDPA, and even before the enactment of § 2244, the Supreme Court developed several principles limiting the review of second or subsequent habeas petitions.").

The successive-use-of-the-writ doctrine "authorized a federal court to decline to consider a habeas petition presenting a claim that was previously raised and adjudicated in an earlier habeas proceeding, unless the court determined that hearing the claim would serve the ends of justice." *Stanko*, 617 F.3d at 1269; *see id.* at n.7. The ends-of-justice exception had been described as requiring a "colorable showing of factual innocence," *McCleskey*, 499 U.S. at 495, although the test is now formulated to require a showing that the alleged error "probably has caused the conviction of one innocent of the crime," thereby "implicating a fundamental miscarriage of justice." *Id.* at 494–95.

"Another principle, abuse of the writ, authorized a court to decline to hear a second or subsequent habeas petition raising a claim that could have been presented in an earlier petition but was not." *Stanko*, 617 F.3d at 1269. "[I]f a second or subsequent petition raises a claim that could have been raised in an earlier petition, the petitioner must establish that the omission was not the result of inexcusable neglect in order to proceed on the new claim." *Id.* at 1271. In other words, the petitioner must show "cause for his failure to raise the claim in an earlier proceeding and resulting prejudice." *Stanko*,

7

617 F.3d at 1271. "[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim," or that the claim had not been raised because counsel had been "constitutionally ineffective." *McCleskey*, 499 U.S. at 493–94 (brackets and internal quotation marks omitted). This procedural bar also may be overcome if the petition comes within the miscarriage-of-justice exception by "mak[ing] a proper showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (internal quotation marks omitted); *see Stanko*, 617 F.3d at 1271. A "proper showing" to overcome either bar requires "new evidence [that] shows it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin*, 569 U.S. at 395 (brackets and internal quotation marks omitted). "New evidence" is "relevant evidence that was either excluded or unavailable at trial." *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995); *see id.* at 324 ("To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.").

We can think of no reason why these same restrictions should not apply to petitions for writs of coram nobis. The writ is not to be granted lightly. Its availability is limited to "extraordinary cases presenting circumstances compelling its use to achieve justice." *Denedo*, 556 U.S. at 911 (internal quotation marks omitted). As the First Circuit observed: "The further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment. Thus, direct review is more defendant-friendly than post-judgment review, and an initial habeas

8

petition is easier for a criminal defendant to litigate than a successive one.  The writ of error coram nobis lies at the far end of this continuum."  *United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012) (citations omitted).

Indeed, Tenth Circuit precedent already imposes a bar to coram nobis relief "unless relief under 28 U.S.C. § 2255 was unavailable or would have been inadequate." *United States v. Payne*, 644 F.3d 1111, 1112 (10th Cir. 2011).  In other words, a claim pressed through a coram nobis petition is ordinarily barred if the petitioner previously raised the claim in a § 2255 motion but was unsuccessful or simply failed to pursue the claim under § 2255 when petitioner could have.  It is a small, and wholly logical, step to expand this bar beyond previously available § 2255 motions to include all previously available postconviction avenues for relief.  We have done so in a nonprecedential opinion.  *See United States v. Tarango*, 670 F. App'x 981, 981 (10th Cir. 2016) (Gorsuch, J.)  ("A writ of *coram nobis* may not be used to litigate issues that were or could have been raised on direct appeal or through collateral litigation, including a 28 U.S.C. § 2255 motion.").  We now adopt that proposition here.  Absent those traditional grounds that have excused successive or abusive habeas petitions, a petition for writ of coram nobis must be rejected if the claim was raised or could have been raised on direct appeal, through a § 2255 motion, or in any other prior collateral attack on the conviction or sentence.  Our view finds support in decisions from other circuits.  *See United States v. Swindall*, 107 F.3d 831, 836 n.7 (11th Cir. 1997); *United States v. Camacho-Bordes*, 94 F.3d 1168, 1172–73 (8th Cir. 1996); *United States v. Bartlett*, Nos. 90-6345, 90-6351, 1990 WL 135645, at *1 n.* (4th Cir. Sept. 20, 1990).  *But see United States v. Darnell*,

716 F.2d 479, 481 n.5 (7th Cir. 1983) (the abuse-of-the-writ doctrine does not apply to coram nobis petitions, because the narrow scope of the writ "ensures that coram nobis will not be utilized as a substitute for appeal").

## B.    Application to This Case

Defendant's petition asserts two grounds for relief: (1) that he is actually innocent of the false-statement offense to which he pleaded guilty, because his false statement of S.K.'s age was not material[1], and (2) that he received ineffective assistance of counsel in connection with his guilty plea, because his trial counsel did not inform him of potential immigration consequences of his guilty plea and did not adequately investigate the factual basis of his guilty plea. Both are procedurally barred.

Defendant's actual-innocence claim was raised and rejected in prior collateral attacks. In his § 2255 proceeding we held that his falsification of S.K.'s age in the visa application was a material falsehood and he was not actually innocent of the charge even if the date in the information was incorrect. *See Miles III*, 546 F. App'x at 732–34. And in upholding the rejection of his first coram nobis petition, we determined that Defendant clearly understood at the time of his plea that he was pleading guilty to a false statement related to the visa application, not the application for adjustment of status. *See Miles IV*, 553 F. App'x at 849.

---

[1] The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence" *McQuiggin*, 569 U.S. at 391; *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

10

As for Defendant's first ineffective-assistance claim, he relies on the Supreme Court's decision in *Padilla*, which postdated his conviction.  Perhaps coram nobis is a proper avenue for relief if a claim is based on Supreme Court law that was declared after the defendant had fully served the criminal sentence.  *Cf. United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017) ("Cause excusing procedural default is shown if a claim is so novel that its legal basis was not reasonably available to counsel at the time of the direct appeal." (brackets and internal quotation marks omitted)).  But that is not the case here.  *Padilla* was decided on March 31, 2010, and Defendant filed his § 2255 motion in 2011.  Moreover, the claim could have been included in his 2013 coram nobis petition.[2]

---

[2]  There is a much more disturbing reason why Defendant's *Padilla* claim fails.  Although he is a citizen of Sweden, his counsel conceded at oral argument that he is also a naturalized United States citizen.  *Padilla* concerns counsel's obligation "to inform [a] *noncitizen* client that he faces a risk of deportation."  559 U.S. at 374 (emphasis added).  To pursue this claim, Defendant falsely states in his coram nobis petition and his affidavit in support of the petition that he is an "alien national."  His briefs on appeal do not state outright that he is not a citizen, but his opening brief states that he is a "foreign national," Aplt. Br. at 34, his reply brief states that "the government has failed to provide any proof . . . that [he] is a U.S. Citizen," Reply Br. at 23, and both briefs continue to press the *Padilla* claim.

The apparently knowing and material misrepresentations in Defendant's filings are potential violations of the rules of professional conduct for the United States District Court for the Western District of Oklahoma, and the rules of professional conduct in California and Nevada, two states in which Defendant's counsel, Don P. Chairez, is licensed to practice law.  It appears that Defendant is currently not eligible to practice law in California for administrative reasons, but these misrepresentations might justify professional discipline against him as well.  We direct the clerk to forward copies of this opinion to the State Bar of California and the State Bar of Nevada so that they can assess whether counsel's conduct and/or Miles's conduct warrants any sanction.  *See In re Graham*, 981 F.2d 1135, 1142 (10th Cir. 1992) ("A court may . . . report misconduct by a[n] . . . attorney to that attorney's bar association for the purpose of instituting disciplinary proceedings.");  *Lail v. Apfel*, No. 98-7079, 1999 WL 147305, at *2 (10th Cir. Mar. 18, 1999) ("[C]ontinued misrepresentations to this court . . . may

11

It is even clearer that Defendant's second ineffective-assistance claim could have been raised earlier. The matters that he contends his counsel should have discovered before he pleaded guilty were all presented in his § 2255 proceedings. He was aware of everything that he needed to raise the present ineffective-assistance claim.

To be sure, the procedural bars to Defendant's present claims may be overcome in certain circumstances. But Defendant has not identified any legitimate ground to do so here. He argues that cause for his failure to raise his ineffective-assistance-of-trial-counsel claims is present because of (1) ineffectiveness of trial counsel—in the very respects that he complains of in his coram nobis petition, (2) "new developments in law," Aplt. Br. at 41, and (3) "extrinsic fraud," *id.* at 43. We are not persuaded. He does not explain how ineffectiveness of trial counsel kept him from arguing his ineffectiveness claims in his § 2255 proceedings or his first coram nobis petition; the cases he cites as "new developments" are not essential, or even material, to his present claims; and the evidence of asserted fraud is only the untrue allegation that the prosecution and the courts incorrectly characterized his guilty plea as being to his false statement on the visa application.

Nor can Defendant rely on the actual-innocence exception to procedural bar. The only new evidence he puts forward in support of his argument for actual innocence is a

---

lead . . . to . . . a referral to the Oklahoma State Bar for possible disciplinary proceedings."). Because counsel informed this court during oral argument that Miles is also a medical doctor, we direct the clerk to forward copies of this opinion to the Oklahoma Medical Board, the New York Office of Professional Medical Conduct, the Arizona Medical Board, and the Medical Board of California, all states in which Miles was licensed to practice medicine.

2013 Department of Homeland Security guidance document that he claims tends to prove that a 14-year-old can qualify for a fiancée visa. He argues that this document establishes that his false statement of S.K's age was not material. But we doubt that this document would have affected our reasoning in rejecting Defendant's actual-innocence claim in his § 2255 proceeding. *See Miles III*, 546 F. App'x at 734 ("[I]n assessing the ability of Mr. Miles and his fiancée to conclude a valid marriage within ninety days of her arrival for purposes of the K–1 visa, the true age of his fiancée, which would have triggered significant if not conclusive impediments, was plainly a material consideration."). It does not make it "more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.

### III.     CONCLUSION

We **AFFIRM** the denial of Defendant's petition.

13